**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

WANDA FONDREN,

        Plaintiff,

        v.

FRANK BISIGNANO, Commissioner of
Social Security,

        Defendant.

CIVIL ACTION NO.: 6:25-cv-18

## REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Linda Taylor ("the ALJ" or "ALJ Taylor") denying her claim for Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to reverse the ALJ's decision. Doc. 8. Defendant asserts the Commissioner's decision should be affirmed. Doc. 14. Plaintiff filed a Reply. Doc 15. For the following reasons, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on April 9, 2021, alleging an onset date of October 1, 2017. R. 112.[1] Plaintiff also filed an application for Supplemental Security Income on that same day, alleging the same onset date. Id. On April 23, 2023, Administrative Law Judge Antony Saragas ("ALJ Saragas") held a

---

[1] A transcript of the entire proceedings before the Social Security Administration appears at Document Number 7. The transcript includes paginated Record cites. Docs. 7-1 to 7-8. I refer to the transcript using these same Record cites.

hearing, at which Plaintiff, who was represented by counsel, appeared and testified. R. 112, 125. Valerie E. Allen, a vocational expert ("VE"), also appeared at the hearing. R. 112. ALJ Saragas denied Plaintiff's claims after the hearing in a decision on May 17, 2023. R. 112–25. The Appeals Council granted Plaintiff's request for review of ALJ Saragas's decision. R. 135. The Appeals Council remanded the case for ALJ Taylor to consider evidence of evidence of impairment. R. 135–37. ALJ Taylor held a second hearing on August 29, 2024. R. 10. ALJ Taylor then denied Plaintiff's claims after the hearing in a decision on November 22, 2024. R. 10–23. The Appeals Council then denied Plaintiff's request for review of ALJ Taylor's decision. R. 1.

Plaintiff, born on May 31, 1970, was 47 years old at the time of the alleged onset date and 54 years old at the time of the ALJ's decision in 2024. R. 123. Plaintiff has at least a high school education. R. 85. Plaintiff has no past relevant work. R. 30.

## DISCUSSION

### I.  The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

2

42 U.S.C. § 423(d)(2)(A).  Under the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Bowen, 482 U.S. at 140.  If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.  Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  A severe impairment is one that significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1522(a).  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Bowen, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's RFC "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform her past

3

relevant work, the final step of the evaluation process determines whether she can adjust to other work in the national economy, considering her age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Bowen, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff did not engage in substantial gainful activity since her alleged onset date, October 1, 2017.  R. 13.  At step two, ALJ Taylor determined Plaintiff had the following severe impairments: degenerative disc and sacroiliac joint disease; sciatica; multi-joint osteoarthritis, status post right ankle fracture; restless leg syndrome; degenerative joint disease left hip; chronic obstructive pulmonary disease ("COPD") with tobacco use; and hernia, status post-repair.  R. 13–15.  The ALJ also determined that Plaintiff's "medically determinable mental impairments of depression; anxiety; post-traumatic stress disorder (PTSD); attention deficit hyperactivity disorder (ADHD); [and] opioid and cocaine abuse in remission do not cause more than a minimal limitation . . . and are therefore non[-]severe."[2]  R. 13.  At the third step, the ALJ determined Plaintiff's impairment or combination of impairments did not meet the severity of an impairment listed in the Code of Federal Regulations.  R. 15.

The ALJ found that Plaintiff has the RFC to perform light work, except that Plaintiff can sometimes stoop, kneel, crouch, and climb ramps and stairs.  R. 17.  Plaintiff should never crawl, climb ladders, ropes, or scaffolds or have exposure to workplace hazards, including unprotected heights and moving mechanical parts.  She should not have exposure to uneven terrain nor

---

[2]  At one point, the ALJ states that medical evidence shows that Plaintiff "carried a diagnosis of depression, anxiety, and PTSD that are severe . . . ."  R. 21.  The Commissioner contends the ALJ's characterization of these impairments as "severe" is a typographical error, given that the ALJ repeatedly stated these impairments were non-severe throughout the opinion.  Doc. 14 at 10 n.1.  Plaintiff did not address the issue.  I address this contention no further.

perform commercial driving.  Plaintiff can sometimes operate foot controls with both lower extremities.  Plaintiff should have no concentrated exposure to pulmonary irritants, including dust, odors, gases, and fumes.

At the next step, the ALJ determined Plaintiff has no past relevant work.  R. 22.  The ALJ determined transferability of job skills is not material to the determination of disability because Plaintiff lacked past relevant work.  Id.  The ALJ concluded at the fifth and final step that Plaintiff could perform jobs, such as mail sorter, collator operator, and cashier, all of which exist in significant numbers in the national economy.  R. 22–23.

## II.     Issues Presented

Plaintiff contends that the ALJ's RFC assessment is inadequate.  Plaintiff contends that the ALJ failed to discuss Plaintiff's non-severe mental impairments and failed to explain how they affect Plaintiff's ability to work.  Doc. 8 at 7–10.  Plaintiff also contends the ALJ failed to meet the Commissioner's step five burden to prove that Plaintiff can perform a significant number of jobs in the economy.  Plaintiff also argues that substantial evidence does not support the ALJ's RFC assessment because the ALJ formulated it without medical opinions in the record.  Id. at 19–23.

## III.    Standard of Review

It is well established that judicial review of social security cases is limited to questions of whether "substantial evidence" supports the Commissioner's factual findings and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the

evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), overruled by statute on other grounds recognized by Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.**    **The ALJ Adequately Addressed Plaintiff's Non-Severe Mental Impairments When Assessing Plaintiff's RFC**

Plaintiff argues that ALJ Taylor erred because she failed to discuss Plaintiff's non-severe mental impairments when formulating the RFC.  Doc. 8 at 7–10.  Plaintiff states that the ALJ focused "entirely on her physical impairments[.]"  Id. at 12.  Plaintiff contends that the ALJ did not provide sufficient reasons for a reviewing court to determine whether the ALJ used the

6

proper legal analysis.  Id. (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268–69 (11th Cir. 2019)).  Plaintiff states that the ALJ's findings about Plaintiff's mental health were made solely to determine the severity of Plaintiff's conditions and not to formulate the RFC.  Doc. 15 at 3.  Plaintiff argues that this error is harmful because the ALJ wrongfully concluded that Plaintiff could do several roles without considering Plaintiff's ability to perform duties because of Plaintiff's severe and non-severe impairments.  Id. at 11.  Plaintiff argues that this error violates Social Security Ruling ("SSR") 96-8p.  Id. at 8.

The Commissioner argues the ALJ did all she needed to do in assessing the impact of mental impairments on Plaintiff's RFC.  At step three, the ALJ analyzed the four areas of mental functioning set out for evaluating the severity of mental disorders, known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  R. 13–15; see also 20 C.F.R., Pt. 404, Subpt. P, App. 1.  The Commissioner contends the ALJ fully considered Plaintiff's impairments during the "paragraph B" analysis and notes the ALJ said that her RFC assessment also included the limitations she found during this analysis.  Doc. 14 at 4–10.  The Commissioner points out that during the RFC assessment, the ALJ "considered evidence related to [Plaintiff's] non[-]severe mental impairments" and noted Plaintiff's use of pharmaceutical treatment for PTSD and anxiety.  Id. at 9.  During the RFC assessment, the ALJ further considered a statement that Plaintiff's mother provided about Plaintiff's daily activities.  Id.  The Commissioner further emphasizes that the ALJ considered an opinion from the State agency consultant, Dr. Massey, even though the ALJ ultimately found that opinion to be unpersuasive.  Id.  In finding Dr. Massey's opinion unpersuasive, the ALJ pointed to Plaintiff's treatment records.

"The 'RFC is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments.'" Malak v. Comm'r of Soc. Sec., 131 F.4th 1280, 1285 (11th Cir. 2025) (alteration in original) (quoting Lewis, 125 F.3d at 1440). Even if the ALJ does not identify an impairment as severe at step two of the sequential evaluation process, the ALJ must consider all impairments in combination during the RFC assessment. 20 C.F.R. § 404.1545(a)(2). The Eleventh Circuit Court of Appeals has also stated that "the best way to read the ALJ's decision is 'as a whole'" when determining whether the ALJ considered all impairments as part of the RFC assessment. Prude v. Comm'r Soc. Sec. Admin., No. 23-14198, 2024 WL 5103664, at *4 (11th Cir. Dec. 13, 2024) (quoting Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1276 (11th Cir. 2024)). This is because it "would be a needless formality to have the ALJ repeat substantially similar factual analyses." Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1276 (11th Cir. 2024).

Here, substantial evidence supports the ALJ's decision. The ALJ provided enough detail to show she considered Plaintiff's mental impairments when determining the RFC and found that mental limitations were unwarranted. The ALJ thoroughly assessed Plaintiff's mental impairments in the "paragraph B" mental function analysis and then expressly incorporated that assessment into the RFC assessment. R. 13–15. In the RFC assessment, the ALJ also discussed Plaintiff's use of "gabapentin for PTSD and anxiety" and observed that the medication had "been helping with symptoms." R. 17. The ALJ also described Plaintiff's mother's testimony about Plaintiff's ability to complete tasks of daily living. R. 21. The ALJ considered and discussed Dr. Massey's opinion about Plaintiff's mental impairments and, in doing so, reviewed, considered, and discussed Plaintiff's treatment records. Id. Ultimately, the ALJ concluded that the medical evidence established medically determinable impairments of depression, anxiety,

8

and PTSD and that the record showed that Plaintiff "would have no more than mild limitations in her ability to perform basic mental work activities." Id. Based on this record and the ALJ's statements in the decision, Plaintiff has not shown that the ALJ failed to adequately consider or discuss Plaintiff's mental impairments. Consequently, the Court should conclude that substantial evidence supports the ALJ's RFC assessment and reject this portion of Plaintiff's challenge.

It is important to discuss one particular impairment. The ALJ concluded that Plaintiff suffered from opioid and cocaine abuse in remission, but the ALJ did not explicitly reference that impairment in the RFC assessment. Even so, this omission does not mean substantial evidence does not support the ALJ's RFC assessment. There is no indication in the record that this specific condition—alone or when combined with other impairments—would have impacted the ALJ's ultimate RFC determination in any way. Courts considering similar issues have concluded that an ALJ does not need to include a mental limitation when forming an RFC for non-severe mental impairments. See Garcia v. Comm'r, Soc. Sec. Admin., No. 23-11184, 2023 WL 7404856, at *6 (11th Cir. Nov. 9, 2023) ("Thus, evidence in the record supports the ALJ's finding that [the plaintiff]'s mental impairments were non-severe and did not cause more than minimal limitation . . . . The ALJ therefore did not err in failing to include a mental limitation when forming his RFC."); Faircloth v. Comm'r of Soc. Sec., No. 6:21-cv-782, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022) ("Notably, an ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations . . . . Here, the ALJ addressed Plaintiff's mild mental limitations . . . by referencing Plaintiff's limitation in social interactions when making the RFC assessment[.]"). Furthermore, the ALJ's statement from the RFC that Plaintiff "would have no more than mild limitations in her ability to perform basic work activities" indicates that the ALJ considered all of Plaintiff's non-severe impairments.

9

I note that Plaintiff relies on Schink v. Comm'r of Soc. Sec. and Arce v. Comm'r of Soc. Sec. in support of her argument that the ALJ's RFC determination was inadequate. However, both Schink and Arce are distinguishable.

In Schink, in the RFC analysis, the ALJ explained that the plaintiff had bipolar disorder but did not explain how this mental condition affected the ultimate RFC. 935 F.3d 1245, 1269 (11th Cir. 2019). The Eleventh Circuit remanded, concluding that the ALJ did not discuss any of the claimant's mental conditions in his RFC. Id. at 1268. The court determined that a reference to the plaintiff's bipolar disorder, without real discussion, was not sufficient. Id. The ALJ's assertion "that he considered all symptoms" was not sufficient either. Id. The Schink court also concluded that the record did not support the ALJ's conclusion that the plaintiff's mental examinations revealed a mild impairment at step two. Id. The court explained that an ALJ must show she considered non-severe impairments when formulating a plaintiff's RFC because an "ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right." Id. (quoting Keeton v. Dep't of Health & Hum. Servs., 21 F.3d 1064, 1066 (11th Cir. 1994)). Similarly, in Arce, the ALJ did not address the plaintiff's mental capacities at all in determining the RFC and, instead, only relied on the mental function analysis. No. 23-11315, 2024 WL 36061, at *2 (11th Cir. Jan. 3, 2024).

The ALJ's RFC assessment in this case is distinguishable from the RFC assessments in Schink and Arce. Unlike the ALJs in Schink and Arce, ALJ Taylor explicitly acknowledged Plaintiff's mental capabilities relevant to work in the RFC analysis. R. 21. The ALJ also went beyond the paragraph B consideration when fashioning the RFC. Ultimately, the ALJ provided enough detail to show she considered Plaintiff's mental impairments when determining the RFC.

Substantial evidence supports the ALJ's RFC determination, and Plaintiff's argument to the contrary is unconvincing.

**V.      The ALJ Appropriately Relied on the Vocational Expert's Testimony**

Plaintiff argues that the ALJ failed to meet the burden at step five to show there were a significant number of jobs in the national economy that Plaintiff could perform.  Doc. 8 at 12–14.  The ALJ determined that there were at least 986,000 jobs that Plaintiff could perform and that constitutes a significant number of jobs.  R. 23.  Plaintiff argues that an apparent conflict between the ALJ's jobs determination and The Dictionary of Occupational Titles ("DOT") eliminates all but 48,000 jobs the VE identified.  Doc. 8 at 12.  Plaintiff states the ALJ did not assess whether these remaining jobs constitute a significant number.  Id.  Plaintiff argues that there is a conflict because the identified jobs have a reasoning level of three and that the ALJ should have included a limitation in the RFC due to her non-severe impairments.  Id. at 12–13.  Thus, Plaintiff contends that the Court should remand this case so that the ALJ may determine whether the remaining 48,000 mail sorter jobs exist in significant numbers.  Id. at 13.

"SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony."  Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1362 (11th Cir. 2018).  An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE."  Id. at 1365.  "It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony."  Id.  "[A] conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case."  Id.  But "if there is a 'potential tension' between Plaintiff's limitations and [a DOT job definition], that tension does not mean an 'apparent' conflict exists."  Larry v. Comm'r of Soc. Sec., No. 8:21-CV-582, 2022

WL 2128802, at *5 (M.D. Fla. June 14, 2022) (citing <u>Buckwalter v. Acting Comm'r of Soc.</u> <u>Sec.</u>, 5 F.4th 1315, 1323 (11th Cir. 2021)).

In support of the argument that there was a conflict, Plaintiff argues that the ALJ should have "accounted for the functional impact of Plaintiff's mild mental limitations." Doc. 15 at 4. This contention, even if correct, does not demonstrate any apparent conflict between the <u>DOT</u> and the VE's testimony. Rather, Plaintiff contends that the VE identified jobs that were available to Plaintiff, but which Plaintiff contends she was unable to perform.

The VE testified that mail sorter, collator operator, and cashier jobs were examples of occupations a "hypothetical individual" with physical limitations like those the ALJ assessed in Plaintiff's RFC "would be able to perform[.]" R. 67–68. The ALJ then posed a question to the VE about another hypothetical individual, one who might need to remove herself from work to "manage her conditions . . . [like] stress or social interaction." R. 69. The VE answered that this need would "eliminate all jobs." <u>Id.</u> But the VE acknowledged that this answer was based on the VE's experiences, not the <u>DOT</u>. <u>Id.</u> Plaintiff's counsel did not otherwise ask the VE about limitations Plaintiff's non-severe mental impairments caused. R. 69–70.

There is no apparent conflict between the <u>DOT</u> definitions and the VE testimony. The VE did not testify about hypothetical individual impairments arising from Plaintiff's non-severe mental impairments, which she contends should have been included in the RFC. To the extent Plaintiff argues that the ALJ (or the VE) was required to resolve some other conflict, that argument lacks merit. <u>See</u> <u>McCutcheon v. Comm'r of Soc. Sec.</u>, No. 8:19-CV-3023, 2021 WL 268197, at *3 (M.D. Fla. Jan. 27, 2021) ("Plaintiff's argument conflates the ALJ's duty to resolve conflicts between the VE's testimony and the <u>DOT</u>, recognized in <u>Washington</u>, into a

duty to resolve *any* conflict.  The holding in Washington does not stretch that far." (emphasis in original)).  Ultimately, Plaintiff has failed to identify any conflict the ALJ needed to resolve.

I note that Plaintiff relies on Viverette v. Comm'r of Soc. Sec. for support of this argument.  But Viverette is distinguishable.  In Viverette, the ALJ specifically limited the plaintiff to "simple, routine, and repetitive tasks."  13 F.4th 1309, 1313 (11th Cir. 2021).  The court concluded that remand was necessary because there was "an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning," and therefore "the ALJ [was] required to address the apparent conflict and provide a reasonable explanation for her determination."  Id. at 1317.  The apparent conflict in Viverette eliminated all but 21,000 jobs, and the ALJ had not determined that those 21,000 jobs were significant.  Id. at 1318.

Unlike Viverette, the ALJ in this case did not determine that Plaintiff was limited to simple, routine, and repetitive tasks.  R. 17.  "This puts [this] case outside Viverette's orbit[.]"  E.g., Holston v. Comm'r of Soc. Sec., Case No. 2:22-cv-490, 2023 WL 3916171, at *3 (M.D. Fla. June 9, 2023); see also Gonzalez v. Comm'r of Soc. Sec., Case No. 8:23-cv-106, 2024 WL 489494, at *7 (M.D. Fla. Feb. 8, 2024) ("[B]ecause [the p]laintiff was not limited to 'simple' tasks and instructions, it is not clear that Viverette mandates a finding that there was an apparent conflict between the VE's testimony and the DOT.").

In her Reply, Plaintiff argues that Viverette compels remand because the ALJ failed to "explain how [Plaintiff]'s non-severe mental impairments affected . . . basic work-related functions," so "the RFC assessment is incomplete[.]"  Doc. 15 at 4.  But, as discussed above, the ALJ adequately discussed Plaintiff's non-severe mental impairments in her RFC assessment.  And the Viverette court did not address an allegedly incomplete RFC assessment.  Instead, the

13

court only considered "whether there is an apparent conflict between a limitation to simple, routine, and repetitive tasks and level 3 reasoning."  13 F.4th at 1311.

Plaintiff also relies on Lowery v. Acting Comm'r, Soc. Sec. Admin., No. 22-13913, 2024 WL 890133, at *6 (11th Cir. Mar. 1, 2024).  In Lowery, the court indicated there might be a conflict between an RFC that limited an individual's ability to follow multi-step directions and a VE's testimony about level-two reasoning jobs, which may involve multi-step instructions. (applying old treating source rules to RFC assessment).  Again, this case is distinguishable. Unlike Lowery, Plaintiff here has not identified any apparent conflict between the DOT and the VE's testimony.  See R. 64–69.  And there is no conflict between the RFC and the VE's testimony.  The ALJ concluded that Plaintiff "would have no more than mild limitations in her ability to perform basic mental work activities," and the VE offered testimony about a hypothetical individual with those limitations.  R. 21.

**VI.    Substantial Evidence Supports the ALJ's RFC Determination**

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because there were no medical opinions in the record.  Doc. 8 at 14–18.  When formulating her RFC, the ALJ relied on hearing-level evidence to determine how Plaintiff's physical impairments affected her ability to work.  Id.  Plaintiff states that the ALJ could not determine how the combination of Plaintiff's impairments affect her ability to perform a limited range of light work.  Id. at 18.  Plaintiff also states that the ALJ impermissibly interpreted "raw data" as a lay person to determine Plaintiff's RFC.  Doc. 15 at 7–8.

The Commissioner argues in response that substantial evidence supports the ALJ's RFC determination.  Doc. 14 at 13–14.  The Commissioner argues that the ALJ did not need a medical opinion to assess Plaintiff's RFC.  Id.

14

The RFC is a determination within the sole province of the ALJ, not a medical conclusion.  20 C.F.R. §§ 404.1527(d), 404.1546(c).  An ALJ does not need a medical opinion interpreting the record to craft an RFC supported by substantial evidence.  See Green v. SSA, 223 F. App'x 915, 923 (11th Cir. 2007) (holding the ALJ could determine an RFC after rejecting the only medical opinion in the record); Langley v. Astrue, 777 F. Supp. 2d 1250, 1252–61 (N.D. Ala. 2011) ("[T]he court concludes that the law of this Circuit does not require[] an RFC from a physician.").

A review of the ALJ's assessment of the record evidence shows that there is substantial evidence to support the ALJ's determination that Plaintiff retained the capacity to perform light work with the other stated limitations.  Starting with non-medical evidence, the ALJ addressed Plaintiff's testimony from the August 29, 2024 hearing, R. 17, 20, where Plaintiff testified about symptoms and limitations impacting her legs, COPD, hernia surgery, and mental symptoms.  R. 76–83.  Plaintiff testified that she has been experiencing persistent back and ankle pain and that she walks with a cane.  R. 76–78.  Plaintiff also testified that she had "gotten a job."  R. 82.  The ALJ found that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  R. 18.

The ALJ also addressed Plaintiff's mother's testimony about Plaintiff's limitations. R. 21.  Plaintiff's mother testified that Plaintiff "cries, [is] aggravated easily due to pain, and gets confused about what she's doing."  R. 489.  Plaintiff's mother also stated that Plaintiff's knee, ankle, and back pain affect her ability to lift, squat, bend, stand, walk, kneel, and complete tasks, R. 490, and that Plaintiff's illnesses affect her memory, understanding, and abilities to follow instructions and get along with others.  R. 460.

The ALJ discussed medical evidence related to the impact and progression of Plaintiff's foot, knee, hip, and lumbar spine conditions.  The ALJ discussed reports about Plaintiff's mild bilateral hip osteoarthritis and sciatica.  R. 19.  The ALJ discussed reports about the symptoms of Plaintiff's restless leg syndrome.  Id.  The ALJ discussed assessments of Plaintiff's right ankle fracture and November 2021 treatment notes that stated that Plaintiff's underlying fracture had presumably healed.  R. 20.  The ALJ discussed notes from Plaintiff's follow-up appointments in April 2022 that stated that Plaintiff had degenerative disk disease and back pain and in December 2022 that Plaintiff's lumbar spine was positive for tenderness with muscle spasms.  Id.  The ALJ also discussed notes detailing Plaintiff's back pain, including her statement that "her pain was worse with activity but did not get better with rest."  R. 18.  Further, the ALJ discussed reports about Plaintiff's sacroiliac joint disease and degenerative joint disease in the knee.  R. 21.

The ALJ also addressed Plaintiff's mobility.  The ALJ discussed treatment encounter notes from appointments in January 2018 and February 2022 about testing that showed that Plaintiff "had normal motor strength and tone, normal movement of all extremities, and no evidence of edema[.]"  R. 18, 20.  The ALJ explained that physician's assistant Lauren Sack reported in March 2021 that Plaintiff's "lumbar spine showed decreased range of motion to flexion and extension of the spine due to pain and stiffness."  R. 19.  But the ALJ also noted that the same notes contained an observation that Plaintiff could still walk unassisted.  R. 20.  The ALJ also discussed reports from later follow-up appointments in July 2022 and December 2022, where care providers stated that Plaintiff had a full range of motion.  Id.  The ALJ noted that Plaintiff "had a physically demanding job and was taking care of her family as well" during this period.  Id.  The ALJ referenced a report by Dr. Michael Williams after a visit in January 2024,

16

noting that Plaintiff had "normal tone and motor strength," "normal movement of all extremities," and normal gait and station.  R. 946–47.

The ALJ also addressed the effects of Plaintiff's hernia surgery.  The ALJ considered Plaintiff's testimony about her hernia.  R. 17.  Plaintiff testified that her "breathing has gotten extremely worse since the surgery."  R. 80.  The ALJ also reviewed, considered, and discussed reports Dr. Williams prepared about Plaintiff's hernia repair in January 2024, noting that the hernia was without obstruction or gangrene and was not specified as recurrent.  R. 20.

Next, the ALJ addressed Plaintiff's respiratory conditions.  The ALJ discussed findings from an October 2024 examination by Dr. Mark Hoerman, who analyzed Plaintiff's history of tobacco use and COPD.  Id.  During that examination, Plaintiff complained of shortness of breath and wheezing.  The ALJ noted that Plaintiff has an intermittent cough but that she has no chest congestion or chest tightness.  Id.  The ALJ noted that Plaintiff's symptoms increase with activity, heat, and humidity.  Id.  The ALJ also noted that Plaintiff's smoking has decreased.  Id.

Finally, as discussed above, the ALJ addressed Plaintiff's mental conditions.  The ALJ concluded that the medical evidence established medically determinable impairments of depression, anxiety, and PTSD but that the record showed that Plaintiff "would have no more than mild limitations in her ability to perform basic mental work activities."  Id.

The ALJ concluded by assessing a limitation in the RFC to "work at the light exertional level with occasional stooping, kneeling, crouching, operat[ing] foot controls with both lower extremities, and climbing of ramps and stairs."  R. 21.  The ALJ further limited Plaintiff "to no crawling, climbing of ladders, ropes, or scaffolds, [or] exposure to workplace hazards including unprotected heights and moving mechanical parts."  Id.  The ALJ explained that these limitations accounted for Plaintiff's degenerative disc and sacroiliac joint disease; sciatica; multi-joint

17

osteoarthritis, status post right ankle fracture; restless leg syndrome; degenerative joint disease in her left hip; chronic obstructive pulmonary disorder with tobacco use; and hernia.  Id.

The ALJ's extensive discussion of the evidence of record in the RFC determination demonstrates that substantial evidence supports the ALJ's evaluation.  The ALJ did not merely interpret raw data.  Instead, the ALJ closely considered the entire longitudinal record of Plaintiff's various impairments and assessed how those impairments would bear on Plaintiff's RFC.  Substantial evidence supports the ALJ's RFC determination.

Plaintiff argues that the ALJ could not determine how the combined effects of Plaintiff's impairments affected her ability to work without a medical opinion.  Doc. 8 at 18.  But for remand to be proper, Plaintiff "must show the absence of substantial evidence supporting the ALJ's conclusion."  Sims v. Comm'r of Soc. Sec., 706 F. App'x 595, 604 (11th Cir. 2017).  Beyond stating that she has multiple severe impairments and mental health symptoms, Plaintiff does not explain why the ALJ could not assess Plaintiff's limitations or otherwise show that substantial evidence does not support the ALJ's decision.  This argument is conclusory and unconvincing.

Plaintiff also argues that substantial evidence does not support the ALJ's RFC determination because she interpreted raw medical data without expert input.  Doc. 15 at 8.  There is no rule that an ALJ may never "interpret raw data in a medical record."  Castle v. Colvin, 557 F. App'x 849, 854 (11th Cir. 2014).  Plaintiff does not identify any information in the record that was too technical for the ALJ to consider.  Further, the ALJ did not simply analyze raw data here.  The ALJ considered the whole record, discussing care providers' findings and interpretations alongside Plaintiff's testimony.  R. 18–20.  Thus, Plaintiff has not shown that the ALJ committed any error.

18

Plaintiff's citations to authority are unpersuasive.  Plaintiff cites no binding authority from this Circuit to support her argument.  Plaintiff relies on Benton v. Astrue and Manso-Pizarro v. Sec'y of Health & Hum. Servs. when arguing that it constitutes reversable error for the ALJ to not rely on medical opinion testimony in cases where the plaintiff has severe impairments.  Doc. 8 at 14–16 (citing Case No. 2:07CV643, 2008 WL 4183437 (M.D. Ala. Sep. 10, 2008); Doc. 15 at 6–7 (citing 76 F.3d 15, 17 (1st Cir. 1996)).  Both cases are distinguishable.

In Benton, the court determined it was unable to determine the effects of the plaintiff's conditions because the record did not provide a sufficient basis to assess whether the plaintiff's impairments would cause limitations.  2008 WL 4183437, at *4.  In the instant case, the record and the ALJ's discussion of the record provide amble bases to assess whether Plaintiff's impairments would cause limitations.

And in Manso-Pizarro, "non-trivial" parts of the medical reports were illegible and the ALJ interpreted medical records about the plaintiff's cardiac condition, including seven ECGs indicating sinus tachycardia, two chest x-rays showing an enlarged heart, and laboratory and chemical profiles.  76 F.3d at 18.  By contrast, the medical evidence the ALJ used to determine the RFC here includes straightforward findings and numerous treatment notes.  While Plaintiff's record is long, there is no indication that the ALJ interpretated illegible or complex raw medical data.  Therefore, Benton and Manso-Pizarro dealt with a materially different set of facts than this case.  Plaintiff's argument on this point is unconvincing and does not warrant remand.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 23rd day of February, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA